UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:12-CR-49 |
| vs. | ) | |
| | ) | |
| JOHN LESLIE WAGNER | ) | COLLIER/CARTER |

REPORT AND RECOMMENDATION

Introduction

This matter came before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct such evidentiary hearings as deemed necessary and to issue a report and recommendation as to the defendant's mental competency to stand trial and sanity at the time of the offense.

Those appearing before the undersigned at the mental competency hearing on Wednesday, June 19, 2013 included the following:

1. AUSA Terra Bay.
2. The defendant, John Leslie Wagner.
3. Attorney Charles Dupree for defendant.
4. Alicia Gilbert, Ph.D., Forensic Psychologist (by video conference).

Motion for Psychiatric and Medical Examination

A motion was filed in this case on November 13, 2012 by defendant moving the Court to evaluate and determine his competency to stand trial pursuant to 18 U.S.C. § 4241 and § 4242 (Doc. 32). The Court conducted a hearing on said motion and entered an order on November 20, 2012 (Doc. 35) granting a psychiatric/psychological evaluation to determine whether the defendant is suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or

1

assist properly in his defense and to address issues related to sanity at the time of the offense.

At the Wednesday, June 19, 2013 hearing, AUSA Terra Bay called Alicia Gilbert, Ph.D., forensic psychologist with the Metropolitan Correctional Center in San Diego, California. She testified that she holds a master's degree in clinical psychology from California State Universidy in Fullerton California, a second master's degree and Ph.D. in psychology from the California School of Professional Psychology, Alliant International University. She evaluated defendant Wagner as ordered by the Court. Dr. Gilbert relied on several sources including interviews with the defendant, other interactions with defendant, and a review of information about the medical history of the defendant reported in his previous incarceration with the Bureau of Prisons. She administered various tests and reviewed background information including his mental health treatment and history of criminal behavior. In the process of the examination, Dr. Gilbert made behavioral observations which included complaints from the defendant of depression and hallucination. It was Dr. Gilbert's opinion that defendant's level of depression was not disproportionate to his situation. His reports of auditory hallucinations were considered to be inconsistent and "highly unusual" (see page 11 of her forensic evaluation). As to his competence to understand the nature and consequences of the proceedings, it was Dr. Gilbert's opinion that defendant is competent to proceed to trial and that his ability to properly assist counsel in a defense was not substantially impaired by a mental disease or defect (Page 17 of report).In the forensic report, which was made an exhibit to Dr. Gilbert's testimony, the following remarks appear concerning defendant's feigning alleged symptoms or malingering:

> Since Mr. Wagner's memory problems, mental health history, description of auditory and visual hallucinations, and current behavior did not appear consistent with any particular mental health disorder or cognitive deficit, he was given four tests that assess for malingering and/or willingness to put forth his best effort during the testing.

Forensic Evaluation at 12.

> Dr. Gilbert's diagnosis and prognosis was as follows:
>
> The results of the VIP indicate that Mr. Wagner did not put forth his best effort. His responses to the items on VIP suggest that he was answering the items randomly and without much effort. This kind of response style indicates that Mr. Wagner is more than likely to make little effort on other cognitive tests. As a consequence, other tests administered during the course of the evaluation will more than likely be invalid or at least, an inaccurate representation of Mr. Wagner's true abilities and/or mental status.
>
> On the TOMM, Mr. Wagner obtained scores indicative of the possibility of malingering or at least a random response style…
>
> The Rey Memory Test (RMT) and the Rey 15-Item Recognition Trial were given to assess memory and because of its sensitivity to the exaggeration of symptoms. His scores on both tests indicated the possibility that Mr. Wagner was exaggerating his memory difficulties…
>
> Consistent with the VIP, the TOMM, and the Rey Tests, his score on the M-FAST (total score =14; clinical cut-off ranges from 6-9) indicated that it is highly probable that he is malingering psychiatric illness. He endorsed several items in the structured interview that is not typically endorsed by most psychiatric patients. In addition, he endorsed inconsistent, uncommon, and highly unusual symptoms. This is consistent with his reports during the clinical interview and behaviors observed throughout the evaluation period. This is highly suggestive of and consistent with malingering.

Forensic Evaluation at 12, 13.

On the basis of the available information, Mr. Wagner's diagnosis according to the criteria in the <u>Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision</u> (DSM-IV-TR) is:

Axis I: V65.2        Malingering
        304.80        Polysubstance Dependence, In a Controlled Environment
        Rule Out    Adjustment Disorder with Depressed Mood

Axis II: 301.7        Antisocial Personality Disorder

Axis III:              Moderate Degenerative Disc Disease (Verified by Medical Services)
                       Myocardial Infarction (Self-Reported, but Unverified)
                       Stroke (Self-Reported, but Unverified

Forensic Evaluation at 15.

3

Dr. Gilbert expressed her opinion in her report as follows:

The results from the tests administered during the course of the evaluation indicated that Mr. Wagner is most likely malingering or at least exaggerating his memory problems and mental health symptoms. Although it is possible that Mr. Wagner is experiencing some level of depression due to his current situation, his reports of auditory and visual hallucinations are unusual and inconsistent with any mental health disorder. After a review of medical and mental health records, Mr. Wagner's self-report has been regularly inconsistent the entire time he has been housed at the MCC. In addition, records from his previous incarceration indicate a history of inconsistent self-reported mental health symptoms. At FMC Lexington, he reported a history of ADHD and auditory hallucinations. While at FCI Manchester, he reported panic attacks and depressed mood. However, during each one of his incarcerations within the BOP, he routinely requested medications, sometimes even making threats that he would "go off" if his medications were not adjusted. The psychiatrist at the MCC reported that Mr. Wagner was only willing to take a select few medications (medications often abused by inmates). He has routinely denied interest in individual therapy and drug and alcohol treatment and has been described as "vague" in describing his symptoms or behaving in a way that is inconsistent with the symptoms he was reporting.

At this time, it is unclear if anything he is reporting is accurate or considered credible… In addition, there was no evidence to indicate that he was suffering from symptoms associated with ADHD, Bipolar Disorder, Anxiety Disorder with Panic Attacks, or severe depression. Because Mr. Wagner has a lot to gain from feigning or exaggerating his symptoms (obtaining medication and avoiding legal charges, malingering is a probable diagnosis. In addition, he was diagnosed with Polysubstance Dependence due to his reported 25-30 years of methamphetamine and marijuana abuse and approximately seven years of LSD abuse. He also abused a variety of other substances including cocaine, heroin, and alcohol. Moreover, he admitted to being "high on meth" the day he was arrested. His only reported stints of sobriety occurred while he was incarcerated or on probation. Mr. Wagner was also diagnosed with Antisocial Personality Disorder due to his long history of criminal behavior, failure to conform to social norms, and apparent deceitfulness and overall lack of remorse or care for others (no responsibility for his children).
Although it is highly likely that he is malingering most of his reported mental health symptoms (and possibly some of his medical problems), his reports of feeling depressed and worthless are possibly legitimate due to his current legal situation. Therefore a rule out for Adjustment Disorder with Depressed Mood was provided.

Forensic Evaluation at 15.

In summary, Dr. Gilbert concluded her report with the following opinion:

4

> Based on all available information, it is the professional opinion of this writer that Mr. Wagner's present ability to understand the nature and consequences of the court proceedings brought against him, as well as his ability to properly assist counsel in a defense are not substantially impaired by a mental disease or defect. He appears to be operating within an average range of intelligence and there is no evidence to indicate that he is experiencing any significant or severe symptoms of mental illness. Although he claims that he does not remember anything from the day of his arrest or any information that has been provided to him since his arrest in 2011, he has demonstrated a good memory for most other events in his life. Since his arrival to the MCC, his self-report has been inconsistent and possible used as a means for secondary gain. In addition, the results of the testing indicate a high probability that Mr. Wagner is feigning memory problems, often performing worse than most brain injured individuals and individuals suffering from dementia, cognitive impairment, and aphasia. Consequently, it appears that Mr. Wagner can cooperate with his attorney and participate in the legal proceedings against him if he so chooses.

Forensic Evaluation at 17, 18.

> In addressing the issue of sanity at the time of the offense Dr. Gilbert noted:
>
> Due to Mr. Wagner's self-reported lapse in memory for the events surrounding his arrest, assessment of his legal sanity at the time of the alleged crime could not be conducted. However, Mr. Wagner did admit to being "high on meth" at the time of his arrest and insisted that the car that was searched was "not mine." In addition, he does not appear to have any history of severe mental illness prior to his arrest and does not currently present with any symptoms indicative of a severe mental illness. His self-reported stroke in 2004 and heart attack in 1999 could not be verified. Moreover, his memory appeared within normal limits for many other events and situations in his life and appeared limited to the day of his arrest and any subsequent legal proceedings that resulted from his arrest.

Forensic Evaluation at 18.

No other evidence was presented by defendant to contradict the findings contained in the forensic evaluation report. However, I note that the question of sanity at the time of the offense is a question for the jury. Based upon the available evidence it does not appear that Mr. Wagner was insane at the time of the offense.

5

Conclusion

Having carefully reviewed the pleadings and other medical evidence, and heard and considered the testimony and the report of Alicia Gilbert, Ph.D., forensic psychologist, it is RECOMMENDED[1] the Court find the defendant John Leslie Wagner competent to understand the nature and consequences of the proceedings against him and able to assist in his defense.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).