UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Case No. 1:12-CR-49 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| JOHN LESLIE WAGNER | ) | |

## MEMORANDUM & ORDER

On November 13, 2012, Defendant filed an unopposed motion for a psychiatric and/or psychological examination (Court File No. 32). United States Magistrate Judge William B. Mitchell Carter granted Defendant's motion and ordered a mental health evaluation (Court File No. 35). After obtaining the forensic report pertaining to Defendant's evaluation (Court File No. 39), the magistrate judge held a competency hearing (Court File No. 43). On June 24, 2013, the magistrate judge issued a Report and Recommendation ("R&R"), recommending that Defendant be found competent to stand trial (Court File No. 44). Defendant subsequently objected to the magistrate judge's R&R (Court File No. 45) and the Government filed a response (Court File No. 46). For the reasons provided below, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Carter's R&R (Court File No. 44), pursuant to 28 U.S.C. § 636(b)(1), and **DETERMINES** Defendant is competent to understand the nature and consequences of the proceedings against him, able to assist in his defense, and competent to stand trial.

Defendant via counsel objects to the R&R because the magistrate judge found Defendant was competent to stand trial despite Defendant's assertions that he had no clear memory of the events leading up to and following his arrest. Defendant also objects to the magistrate judge's finding that he was most likely "malingering" or feigning memory loss. Defendant further argues the

psychologist unjustifiably relied upon unsubstantiated statements from other prisoners in reaching her opinion. Finally, Defendant objects to the magistrate judge's finding that Defendant was not insane.

The Government, in response, argues Defendant's objections should be denied and the Court should adopt the magistrate judge's R&R. First, the Government points out that the magistrate judge held a hearing at which Dr. Alicia Gilbert, the forensic psychologist, testified. Dr. Gilbert's forensic report was also admitted into evidence. The Government contends Dr. Gilbert's testimony was consistent with her report; Dr. Gilbert's opinion was that Defendant was competent to stand trial; and the magistrate judge properly relied upon Dr. Gilbert's testimony and report. Second, with regard to the finding Defendant was "malingering," the Government claims Dr. Gilbert determined Defendant's memory loss was inconsistent with his symptoms and responses. Finally, the Government points out that the magistrate judge properly concluded Defendant appeared to be sane at the time of the instant offense based on Dr. Gilbert's report.

As a preliminary matter, the Court observes the magistrate judge's R&R is based in large part upon Dr. Gilbert's testimony and her forensic report. The magistrate judge, as the factfinder, had the opportunity to observe and hear Dr. Gilbert and assess her demeanor, putting him in the best position to determine credibility. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002). The magistrate judge found Dr. Gilbert to be a credible witness as can be seen from the weight afforded to Dr. Gilbert's testimony and report. As a result, while the Court will conduct a *de novo* review with respect to Defendant's objections, the Court does note Dr. Gilbert was deemed a credible witness.

Similar to the approach adopted by the magistrate judge in the R&R, the Court has determined the best way to address Defendant's objections is by highlighting the pertinent language

in the forensic report. Dr. Gilbert begins by discussing the nature and extent of the evaluation (Court File No. 39 at 3). She notes Defendant was evaluated on seven non-consecutive days between December 14, 2012, and March 13, 2013. Dr. Gilbert administered several tests, conducted clinical interviews, and performed behavioral observations. She also explains that she gathered supplemental information about Defendant by reviewing various legal documents, inmate information from the Bureau of Prisons, and Defendant's medical and mental health records.

In describing her concerns about Defendant's "malingering" or feigning memory loss, Dr. Gilbert lays out the various tests that were performed on Defendant.

> Since Mr. Wagner's memory problems, mental health history, description of auditory and visual hallucinations, and current behavior did not appear consistent with any particular mental health disorder or cognitive deficit, he was given four tests that assess for malingering and/or willingness to put forth his best effort during the testing.

(Court File No. 39 at 13). The results of those tests are as follows:

> The results of the [Validity Indicator Profile or "VIP"] indicate that Mr. Wagner did not put forth his best effort. His responses to the items on VIP suggest that he was answering the items randomly and without much effort. This kind of response style indicates that Mr. Wagner is more than likely to make little effort on other cognitive tests. As a consequence, other tests administered during the course of the evaluation will more than likely be invalid or at least, an inaccurate representation of Mr. Wagner's true abilities and/or mental status.
>
> On the [Test of Memory Malingering or "TOMM"], Mr. Wagner obtained scores indicative of the possibility of malingering or at least a random response style . . . .
>
> The Rey Memory Test (RMT) and the Rey 15-Item Recognition Trial were given to assess memory and because of its sensitivity to the exaggeration of symptoms. His scores on both tests indicated the possibility that Mr. Wagner was exaggerating his memory difficulties. . . .
>
> Consistent with the VIP, the TOMM, and the Rey Tests, his score on the M-FAST (total score =14; clinical cut-off ranges from 6-9) indicated that it is highly probable that he is malingering psychiatric illness. He endorsed several items in the structured interview that is not typically endorsed by most psychiatric patients. In addition, he

3

endorsed inconsistent, uncommon, and highly unusual symptoms. This is consistent with his reports during the clinical interview and behaviors observed throughout the evaluation period. This is highly suggestive of and consistent with malingering.

(Court File No. 39 at 14).

In addition to the tests noted above and the other information made available to Dr. Gilbert, Dr. Gilbert briefly mentions some of the statements made by Defendant's fellow inmates as it pertained to Defendant's institutional adjustment. Specifically, Dr. Gilbert noted:

[S]everal inmates living with Mr. Wagner spontaneously offered information (without solicitation) regarding Mr. Wagner's behavior and demeanor. During these unrelated contacts, these inmates stated on separate occasions that Mr. Wagner is "a big ole faker" and is "faking." These inmates were reportedly upset because they initially believed that he was sick and needy and had gone out of their way to help him. They stated that after a short period of time, they realized that "there was nothing wrong with him." . . .

(Court File No. 39 at 13).

In light of all the information available to Dr. Gilbert, she made the following diagnosis and prognosis based on the criteria in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR).

> Axis I: V65.2 Malingering
>     304.80 Polysubstance Dependence, In a Controlled Environment
>     Rule Out Adjustment Disorder with Depressed Mood
> Axis II: 301.7 Antisocial Personality Disorder
> Axis III: Moderate Degenerative Disc Disease (Verified by Medical Services)
>     Myocardial Infarction (Self-Reported, but Unverified)
>     Stroke (Self-Reported, but Unverified)

(Court File No. 39 at 16). Her explanation for the diagnosis was:

The results from the tests administered during the course of the evaluation indicated that Mr. Wagner is most likely malingering or at least exaggerating his memory problems and mental health symptoms. Although it is possible that Mr. Wagner is experiencing some level of depression due to his current situation, his reports of auditory and visual hallucinations are unusual and inconsistent with any mental health disorder. After a review of medical and mental health records, Mr. Wagner's

4

self-report has been regularly inconsistent the entire time he has been housed at the MCC. In addition, records from his previous incarceration indicate a history of inconsistent self-reported mental health symptoms. At FMC Lexington, he reported a history of ADHD and auditory hallucinations. While at FCI Manchester, he reported panic attacks and depressed mood. However, during each one of his incarcerations within the BOP, he routinely requested medications, sometimes even making threats that he would "go off" if his medications were not adjusted. The psychiatrist at the MCC reported that Mr. Wagner was only willing to take a select few medications (medications often abused by inmates). He has routinely denied interest in individual therapy and drug and alcohol treatment and has been described as "vague" in describing his symptoms or behaving in a way that is inconsistent with the symptoms he was reporting.

At this time, it is unclear if anything he is reporting is accurate or considered credible. Other than his self-reported auditory and visual hallucinations, he did not present with any other symptoms (delusions, disorganized speech, disorganized behavior, alogia, or avolition) associated with a psychotic disorder like Schizophrenia or substance-induced psychosis. In addition, there was no evidence to indicate that he was suffering from symptoms associated with ADHD, Bipolar Disorder, Anxiety Disorder with Panic Attacks, or severe depression. Because Mr. Wagner has a lot to gain from feigning or exaggerating his symptoms (obtaining medication and avoiding legal charges), malingering is a probable diagnosis. In addition, he was diagnosed with Polysubstance Dependence due to his reported 25-30 years of methamphetamine and marijuana abuse and approximately seven years of LSD abuse. He also abused a variety of other substances including cocaine, heroin, and alcohol. Moreover, he admitted to being "high on meth" the day he was arrested. His only reported stints of sobriety occurred while he was incarcerated or on probation. Mr. Wagner was also diagnosed with Antisocial Personality Disorder due to his long history of criminal behavior, failure to conform to social norms, and apparent deceitfulness and overall lack of remorse or care for others (no responsibility for his children).

Although it is highly likely that he is malingering most of his reported mental health symptoms (and possibly some of his medical problems), his reports of feeling depressed and worthless are possibly legitimate due to his current legal situation. Therefore a rule out for Adjustment Disorder with Depressed Mood was provided.

(Court File No. 39 at 16-17).

Dr. Gilbert expressed the following opinion at the end of her forensic report with respect to

Defendant's competency:

Based on all available information, it is the professional opinion of this writer that

> Mr. Wagner's present ability to understand the nature and consequences of the court proceedings brought against him, as well as his ability to properly assist counsel in a defense are not substantially impaired by a mental disease or defect. He appears to be operating within an average range of intelligence and there is no evidence to indicate that he is experiencing any significant or severe symptoms of mental illness. Although he claims that he does not remember anything from the day of his arrest or any information that has been provided to him since his arrest in 2011, he has demonstrated a good memory for most other events in his life. Since his arrival to the MCC, his self-report has been inconsistent and possible used as a means for secondary gain. In addition, the results of the testing indicate a high probability that Mr. Wagner is feigning memory problems, often performing worse than most brain injured individuals and individuals suffering from dementia, cognitive impairment, and aphasia. Consequently, it appears that Mr. Wagner can cooperate with his attorney and participate in the legal proceedings against him if he so chooses.

(Court File No. 39 at 18-19).

She also stated the following as it pertained to Defendant's sanity at the time of the offense:

> Due to Mr. Wagner's self-reported lapse in memory for the events surrounding his arrest, assessment of his legal sanity at the time of the alleged crime could not be conducted. However, Mr. Wagner did admit to being "high on meth" at the time of his arrest and insisted that the car that was searched was "not mine." In addition, he does not appear to have any history of severe mental illness prior to his arrest and does not currently present with any symptoms indicative of a severe mental illness. His self-reported stroke in 2004 and heart attack in 1999 could not be verified. Moreover, his memory appeared within normal limits for many other events and situations in his life and appeared limited to the day of his arrest and any subsequent legal proceedings that resulted from his arrest.

(Court File No. 39 at 19).

Taking all of the above into account, the Court concludes Defendant's objections to the R&R must be denied. First, with respect to Defendant's competency, the Court observes Dr. Gilbert thoroughly explained the basis for her opinion that Defendant was competent to stand trial. The magistrate judge relied upon Dr. Gilbert's testimony and evaluation in reaching the same conclusion. Defendant points to his unexplained loss of memory at the time of the instant offense as the reason he should be found incompetent. Moreover, he objects to the magistrate judge's finding that he was

6

"malingering." The magistrate judge, however, relied upon Dr. Gilbert's testimony and report in making his findings, and the forensic report clearly details the reasons Dr. Gilbert believed Defendant was malingering, including but not limited to Defendant's inconsistent statements and his performance on the VIP, TOMM, and Rey Tests. Defendant also objects to the fact that Dr. Gilbert considered the opinions of various inmates in her evaluation. However, the Court observes Dr. Gilbert only noted the inmates' opinions in discussing Defendant's institutional adjustment. Moreover, to the extent she considered the inmates' statements in reaching her opinion on Defendant's competency, the impact of those statements would be *de minimis* given that Dr. Gilbert also considered interviews with Defendant, behavioral observations, Defendant's mental health and medical history, Defendant's legal history, and the numerous tests described above that all support her opinion. Finally, the Court observes that Defendant offered no evidence at the hearing to refute the findings in the forensic report. Accordingly, the Court concludes Dr. Gilbert's testimony and forensic report provide a sufficient basis from which to find Defendant was competent to understand the nature and consequences of the proceedings against him and able to assist in his defense.

Defendant also objects to the magistrate judge's finding that he was not insane at the time of the instant offense. Although Dr. Gilbert was not able to perform a legal sanity assessment due to Defendant's self-reported memory loss, she considered a number of other factors that would support the conclusion Defendant was not insane at the time of the offense. The Court also agrees with the magistrate judge that, to the extent Defendant's sanity is at issue, that is a question for the jury. Finally, the Court again observes Defendant offered no evidence at the hearing to refute this finding. Therefore, for all of the reasons stated above, the Court agrees with the magistrate judge that it does not appear Defendant was insane at the time of the offense.

In conclusion, the Court denies Defendant's objections. The Court **ACCEPTS** and **ADOPTS** Magistrate Judge Carter's R&R (Court File No. 44), pursuant to 28 U.S.C. § 636(b)(1), and **DETERMINES** Defendant is competent to understand the nature and consequences of the proceedings against him, able to assist in his defense, and competent to stand trial.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**